**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Scott DONATIU, Defendant–Appellant.**

**No. 89–2906.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 18, 1990.

Decided Jan. 22, 1991.

Rehearing and Rehearing En Banc Denied Feb. 27, 1991.

Michael R. Pace, and Barry R. Elden, Asst. U.S. Attys., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for U.S.

Robert D. Seeder, Federal Public Defender, Carol A. Brook, Patrick S. Coffey, Federal Public Defender, Nancy B. Murnighan, Office of the Federal Public Defender, Chicago, Ill., for defendant-appellant.

Before POSNER, RIPPLE and MANION, Circuit Judges.

MANION, Circuit Judge.

Scott Donatiu pleaded guilty to possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and was sentenced within the guidelines to 24 months incarceration followed by three years supervised release. He appeals the sentence, arguing that the government's refusal to move for a downward departure based on Donatiu's alleged "substantial assistance" to the government violated due process. We affirm.

## I.

Donatiu, a 26–year–old Florida resident, ran into former high school classmate Jerry Albanies. Albanies persuaded him to deliver to some "friends" in Chicago 338 grams of 97 percent pure cocaine in a shoe box wrapped in Christmas paper. Donatiu disembarked at Midway Airport in Chicago following his flight from Fort Lauderdale and was stopped by agents of the Drug Enforcement Agency. Donatiu consented to a luggage search which disclosed the cocaine, and he was arrested.

At that point Donatiu decided to cooperate with the authorities. He identified Albanies as his source, and agreed to call him in Florida to receive details about delivering the package of cocaine. Unfortunately Albanies had already heard about Donatiu's arrest and did not implicate himself during the phone conversation. Donatiu later met with government attorneys, but was unable to provide any other helpful information. Donatiu, who claimed to have been threatened by Albanies, offered to testify against him. Albanies was never prosecuted.

Donatiu entered into plea negotiations with the government, but to no avail. Unable to reach an agreement, Donatiu pleaded guilty anyway to one count of possession with intent to distribute 338 grams of cocaine.

In a sentencing memorandum filed with the district court, Donatiu sought a downward departure for acceptance of responsibility and remorse. He also sought a departure pursuant to § 5K1.1 for his alleged substantial assistance to the government, despite the government's decision not to move for such a departure. Donatiu argued that § 5K1.1 violated due process on its face by placing sentencing authority in the hands of the prosecutor, and by depriving the defendant of an opportunity to be heard. Donatiu also alleged that the government's conduct during plea bargain negotiations was in bad faith and violated his due process rights. Donatiu attempted to file an affidavit by his counsel disclosing the contents of the plea negotiations. In keeping with its longstanding policy against disclosure of the contents of plea negotiations, the district court refused to accept the affidavit.

The district court denied Donatiu's motion for a § 5K1.1 departure, holding that it lacked authority to depart downward absent a government motion. The court held that neither § 5K1.1 on its face nor the government's actions in this case violated Donatiu's due process rights. The court also ruled that, even if it had authority to grant Donatiu a departure, no departure was warranted here. The court again denied Donatiu's motion to provide an affidavit detailing the substance of plea negotiations.

Another dispute between the parties erupted when the government changed its

mind about the reduction Donatiu should receive for being a "minor participant" pursuant to § 3B1.2 (Mitigating Roles). The government submitted a "Position Paper as to Sentencing Factors" that modified its original guideline calculation, arguing that a four-point reduction was too much because of the amount and quality of the cocaine, and suggested a two-point reduction instead. Donatiu saw this as further evidence of bad faith and vindictiveness by the government. The government argued that it initially came up with the wrong reduction because it was inexperienced in applying the guidelines. The district court split the difference and awarded Donatiu a three-point reduction, in-between a "minor" and a "minimal" participant.

The district court calculated Donatiu's offense level at 17 with a criminal history category of I, which produced a range between 24 and 27 months. The court sentenced Donatiu to 24 months imprisonment and three years supervised release. After filing his notice of appeal, Donatiu sought to amend the record on appeal with an affidavit of counsel relating to the substance of plea negotiations. The district court denied that motion. Donatiu then moved this court to supplement the record on appeal with the same affidavit. Judge Cummings denied that motion on February 12, 1990, holding that because the government was not obligated to move for a downward departure, and in the absence of a plea agreement in which the government promised to move for a departure, "any bad faith during plea negotiations would not be germane to the issues at hand."

## II.

■ Donatiu's first contention is merely a variation of an argument we have squarely rejected on several occasions. Donatiu argues that § 5K1.1 [1] on its face violates a defendant's due process rights. In *United States v. Lewis,* 896 F.2d 246, 248 (7th Cir.1990), we rejected three "separate but related arguments" that § 5K1.1 violates a defendant's right to due process:

First, Lewis contends that the government motion requirement improperly restricts the sentencing judge's traditional discretion. Second, Lewis contends that the government motion requirement deprives him of his right to present accurate and reliable information to the trial court concerning his substantial assistance. Third, Lewis contends that the government motion requirement presents an unacceptable risk of prejudgment or bias because the prosecutor determines whether a court may consider departing from the guidelines because of a defendant's substantial assistance.

Donatiu fails to distinguish *Lewis.* He says he is not arguing that § 5K1.1 impermissibly limits judicial discretion, but instead that it "denies a criminal defendant the right to a fair sentencing *process,* guaranteed to him by the Fifth Amendment, in which he can contest all relevant sentencing information to ensure its accuracy." (Emphasis in original.) But that argument is nearly identical to the second argument made by Lewis; that the defendant is unable to get all of the information about his assistance before the court.

Whether the argument is labeled one of "procedural due process" or "substantive

---

1. **§ 5K1.1** *Substantial Assistance to Authorities* **(Policy Statement)**

Upon motion of the government stating that the defendant has made a good faith effort to provide substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following conduct:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

due process," it does not survive *Lewis.* Just as in *Lewis,* Donatiu's argument is "premised on the notion that a criminal defendant has a right to an individualized sentence, imposed by a judge, and based upon consideration and weighing of all arguably relevant factors." 896 F.2d at 248. But as we concluded in *Lewis,* Congress does not have to create any opportunity for departure from the guidelines. Defendants have no right to a departure for substantial assistance, and "Congress could reasonably condition any reduction it did provide." *United States v. Valencia,* 913 F.2d 378, 386 (7th Cir.1990). Donatiu's facial challenge is explicitly based on the due process balancing test set out in *Matthews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); while *Lewis* implicitly forecloses Donatiu's facial claim, *Valencia* does so explicitly. *Lewis* concluded that the requirement of a government motion was reasonable. *Valencia* rejected a "slight variation" on the argument of *Lewis*—that the government motion requirement does not meet the Supreme Court's balancing test for determining what process is due in a particular situation. *See Matthews v. Eldridge,* 424 U.S. at 334, 96 S.Ct. at 902.

■ Donatiu next argues that the government's refusal to make the departure motion in this case was arbitrary and motivated by bad faith and vindictiveness. Related to this is Donatiu's contention that the district court erred by failing to consider an affidavit of counsel about the substance of plea negotiations. That information, according to Donatiu, was necessary for the court to determine whether the government's conduct violated his due process rights. The government argues that, absent a plea agreement or promise violated by the government,[2] Donatiu must dem-

onstrate government conduct that "shocks the conscience" or is "outrageous" to prevail on his due process claim. Donatiu asserts that bad faith or arbitrariness in the government's use of § 5K1.1 violates his due process rights.[3]

■ Donatiu relies primarily on a series of decisions from the Eighth Circuit briefly discussing the circumstances under which a district court *might* consider a defendant's substantial assistance even though the government has not made a § 5K1.1 motion. *See e.g. United States v. Justice,* 877 F.2d 664, 668–669 (8th Cir.1989); *United States v. Grant,* 886 F.2d 1513, 1514 (8th Cir.1989); *United States v. Smitherman,* 889 F.2d 189, 191 (8th Cir.1989); *United States v. Sutherland,* 890 F.2d 1042, 1043 (8th Cir.1989); *United States v. Coleman,* 895 F.2d 501, 504 n. 6 (8th Cir.1990). In all of the cases relied on by Donatiu, however, the result was the same—the court approved the government's refusal to make the motion, and held that absent such a motion the district court could not consider departing under § 5K1.1. Since then the Eighth Circuit has gone so far as to reverse a district court's decision to depart downward without a government motion, holding that "district courts are bound to comply with the unambiguous language of section 5K1.1." *United States v. Gutierrez,* 908 F.2d 349, 352 (8th Cir.1990). Other circuits agree that the "clear and unequivocal" language of § 5K1.1 means that "such a departure must begin with a motion of the government." *United States v. Francois,* 889 F.2d 1341, 1343 (4th Cir.1989). *See also Gutierrez, supra,* and cases cited therein. 908 F.2d at 350. The Second Circuit concluded in *United States v. Rexach,* 896 F.2d 710, 713 (2d Cir.1990), that "[g]enerally speaking, in the absence of a specific agreement, the decision by a prosecutor to

---

**2.** In *Lewis* we acknowledged in dicta, and another circuit has held, that if the government fails to move for a departure after promising to do so in a plea agreement, the defendant may be entitled to specific performance. *See United States v. Coleman,* 895 F.2d 501 (8th Cir.1990). Donatiu recognizes that the absence of a plea agreement in this case makes that principle inapplicable here.

**3.** The government points out that Donatiu did not raise any allegation of arbitrariness before the district court. After examining the record, we agree, and the argument is waived. Donatiu's appeal on this point is therefore limited to whether the government's conduct was vindictive and in bad faith, an issue distinct and separate from that of arbitrariness.

forego a downward departure motion in a particular case is not subject to judicial review at all." As we said in *United States v. Brick*, 905 F.2d 1092, 1099 (7th Cir.1990), "[t]here are no exceptions to the motion requirement."

But no court has yet answered the question posed by Donatiu here—can the district court depart downward under § 5K1.1, in the absence of a motion by the government, if bad faith and vindictiveness are alleged? Donatiu contends that this case presents us squarely with the issue sidestepped by all the other courts. We disagree. The government's refusal to make the § 5K1.1 departure motion did not violate Donatiu's due process rights. Even if a bad faith or vindictive refusal to make the motion raised due process concerns—an issue we do not decide—the government's refusal to make the motion in this case was a reasonable exercise of its wide discretion under § 5K1.1.

The government at oral argument claimed to follow a policy, at least in the Northern District of Illinois, of not making a motion for departure unless a defendant's assistance actually helped the government in prosecuting another suspect. Donatiu's attorney, from the Federal Defender Program, disputed the existence of such a policy; perhaps it is more of a guideline. In this case, we have no need to determine whether such a policy (assuming it does exist) is constitutional or consonant with the intent of the Sentencing Commission. Donatiu's attempted assistance was minimal. Donatiu made one phone call to try to trap Albanies, but failed because Albanies knew of Donatiu's arrest. Dona-

tiu later met with government agents to provide more information, but came up with nothing new or helpful. The government's conclusion that Donatiu did not qualify for a substantial assistance motion was reasonable. The district court judge stated on the record that she agreed with the government's decision to not move for a departure, and indicated she would not have granted such a motion.[4] This lends further support to the government's position that Donatiu simply did not qualify for a substantial assistance motion.

This brings us to Donatiu's final point—should the district court have examined the substance of plea negotiations to determine whether the government was refusing to make the motion for vindictive or otherwise improper reasons? While we do not decide whether there can never be a circumstance in which it would be proper for the district court to examine plea negotiations for evidence of bad faith or vindictiveness, we hold that in this case, and in most cases, such an examination was not necessary. As we have already discussed, the government's refusal to make the motion was an objectively reasonable decision.[5] We will not require the district court to entertain § 5K1.1 motions by the defense, in direct contradiction to the requirements of that section, merely because the defendant alleges "bad faith" or "vindictiveness" by the government. Such would be the result were we to conclude that the district court must examine the substance of plea negotiations for evidence of bad faith or vindictiveness. Section 5K1.1 leaves control of the departure motion squarely in the hands of the govern-

---

4. Although not necessary to her holding, Judge Rovner said:

Were it necessary for the Court to determine whether Donatiu was entitled to a departure based on his good faith efforts to provide substantial assistance, the Court would be inclined not to grant Donatiu a departure based on his efforts here.... Based on the record before the Court, and applying the factors set out in § 5K1.1(a) to be considered by a court in determining whether a reduction is appropriate, it is clear that neither "the significance and usefulness" of Donatiu's assistance nor the "nature and

extent" of his assistance would justify a departure under the guidelines.

5. The only other evidence Donatiu presents of bad faith and vindictiveness is his claim that the government retaliatorily changed its position on the reduction he was entitled to for his minimal role in the offense. However, the government's explanation that its original calculation was in error due to inexperience in applying the guidelines, while not commendable, reasonably explains its change of position. The district court ultimately took a position directly in between the government's two positions, indicating that both positions were defensible.

**1336**

ment, and there it shall remain until Congress says otherwise.

The district court's reasons for refusing to examine the plea negotiations are sufficient. The court has maintained a long-standing policy against examining plea negotiations, so as to avoid discouraging future discussions between defendants and the government. The district court noted that Donatiu did not allege that the government ever promised to file a § 5K1.1 motion, nor did the government at any point acknowledge that Donatiu's assistance was substantial. The court concluded, and we agree, that under "the circumstances of this case," including the objective reasonableness of the government's position, consideration of affidavits by the defendant and the government relating to plea negotiations was not necessary.

AFFIRMED.