**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert D. EGAN, Defendant–Appellant.**

**No. 90–3008.**

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1991.

Decided July 9, 1992.*

---

* See text for procedural history in this court.

Barry R. Elden, Asst. U.S. Atty., Ronald D. May (argued), Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

John F. Murphy (argued), Office of the Federal Public Defender, Chicago, Ill., for defendant-appellant.

Before FLAUM and RIPPLE, Circuit Judges, and MOODY, District Judge.**

RIPPLE, Circuit Judge.

This is the direct criminal appeal of Robert D. Egan. Mr. Egan challenges his sentence on the grounds that the district court erred by placing the burden on him of proving that the government acted arbitrarily in refusing to file a substantial assistance motion under the United States Sentencing Guidelines (U.S.S.G. or the guidelines) section 5K1.1 and by ruling that he had failed to show that the government acted arbitrarily. For the following reasons, we affirm the judgment of the district court.

I

BACKGROUND

A. *Facts*

In 1981, Mr. Egan drove Harold Bean and Robert Byron to a neighborhood where

** The Hon. James T. Moody, District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

Bean and Byron carried out a contract murder. Mr. Egan entered into a plea agreement with the state which provided that, in exchange for his testimony against Bean and Byron, the state would charge him with only armed violence and would recommend a reduced sentence. Mr. Egan testified against Bean and Byron. Both were convicted of murder. The state recommended, and Mr. Egan received, a sentence of seven years' imprisonment.

In 1985, after Mr. Egan had served this sentence, the Illinois Supreme Court reversed Bean's conviction. Mr. Egan voluntarily testified at the retrial, which resulted in Bean's conviction. At the time of the second Bean trial, Mr. Egan was in state custody pursuant to a conviction for possession of stolen property. Mr. Egan received no benefit from this testimony in regard to the stolen property conviction.

In 1987, the Illinois Supreme Court reversed Byron's conviction. In 1989, Mr. Egan was arrested on a charge of unarmed bank robbery, the offense underlying this appeal. On January 5, 1990, while awaiting trial on the robbery offense, Mr. Egan voluntarily testified at Byron's retrial, which resulted in conviction. On February 27, 1990, Mr. Egan pled guilty to the federal unarmed robbery charge. The plea agreement did not contain any promise by the government to move for a downward departure in exchange for Mr. Egan's assistance to the state authorities.[1] Prior to sentencing, Mr. Egan filed a "Motion for Downward Departure based on his Substantial Assistance." However, the government refused to move for a downward departure pursuant to U.S.S.G. § 5K1.1.[2] The district court held an evidentiary hearing. Mr. Egan argued that the government's refusal to make a section 5K1.1 motion was arbitrary and in violation of due process of law, thus permitting the court to depart without a motion by the government. In reply, the government contended that its refusal to move for a departure was not arbitrary because Mr. Egan's testimony at the retrials was part of an ongoing obligation to cooperate under the 1982 plea agreement with the state, for which he had received the full benefit of a reduced charge and seven-year sentence.

## B. District Court Opinion

The district court held that it was the defendant's burden to demonstrate that a departure under section 5K1.1 was justified in the absence of a motion by the government.[3] In an attempt to meet that burden, Mr. Egan presented the transcript of his 1982 plea colloquy.[4] Mr. Egan noted that

---

**1.** As a basis for its refusal to make a section 5K1.1 motion, the government initially pointed to the fact that Egan's assistance was to state and not federal authorities on an offense unrelated to the instant federal offense. The government abandoned this argument at the evidentiary hearing before the district court, and, consequently, we need not address it.

**2.** Section 5K1.1 provides that, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

**3.** The district court noted that *United States v. Lewis*, 896 F.2d 246, 249 n. 1 (7th Cir.1990), expressly left open the question of whether there are circumstances under which a sentencing court may depart from the guidelines in consideration of a defendant's substantial assistance absent a motion by the government. The court also noted the apparent conflict between *Lewis* and *United States v. Brick*, 905 F.2d 1092,

1099 (7th Cir.1990), which concluded that "[t]here are no exceptions to the motion requirement." We note in passing that, in *Brick*, the government did not file a formal substantial assistance motion, but it did inform the court at sentencing that the defendant had assisted in the prosecution and conviction of another drug dealer. The district court refused to construe the government's statements as the equivalent of a motion as required by section 5K1.1. On appeal, the defendant argued that the government's statements satisfied section 5K1.1 and that the district court erred by failing to make a finding as to whether his assistance had been substantial. This court held that the government's statements did not satisfy the motion requirement and stated that "[t]here are no exceptions to the motion requirement." 905 F.2d at 1099. Thus, this holding, taken in context, merely speaks to the form a motion must take. The questions of whether the government's refusal to file a substantial assistance motion is reviewable and the scope of that review were not before the court in *Brick*.

**4.** The plea agreement was not put in writing.

the plea colloquy did not refer to a continuing obligation to testify. To show that only his initial testimony was contemplated, he also relied on the statement of the state court at sentencing that he was receiving the seven-year sentence "because it was brought out during the trial course [sic] that you testified in behalf of the State in that particular case. And that was an agreement made to you by the State." R.51 at 4. Mr. Egan also presented the transcripts of the preliminary portions of his testimony in the initial trials and retrials, which disclosed the benefit he received in exchange for his testimony. In each instance, Mr. Egan testified to his understanding of the agreement, that is, that the state would charge him on a lesser offense and recommend a seven-year sentence in exchange for his testimony at the trial. His testimony at the retrials revealed that he had received no additional benefit from the state.

The district court concluded that Mr. Egan "has not shown that his testimony in the re-trials was not part of a promise of ongoing cooperation" and thus that Mr. Egan had failed to satisfy his burden of proving that the government's refusal to make a motion to depart was arbitrary. *United States v. Egan*, 742 F.Supp. 1003, 1005 (N.D.Ill.1990). The district court sentenced Mr. Egan to 168 months' imprisonment followed by a five-year period of supervised release. The applicable guideline range was 168 to 210 months.

After this case was taken under submission by this panel, the court decided, on September 19, 1991, to hear this case en banc. However, on December 16, 1991, the court vacated its order. Because it did not appear that the substantial rights of the defendant would be impaired by the delay, this panel decided to defer decision until the Supreme Court's decision in *Wade v. United States*, — U.S. —, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). With the advent of that decision, we now proceed to decide this case in conformity with its guidance.

## II

## ANALYSIS

### A. *Contentions of the Parties*

On appeal, Mr. Egan argues that the district court erred in requiring him to prove that the terms of his 1982 plea agreement with the state did not include an obligation of ongoing cooperation. Mr. Egan contends that he should not have to prove a negative, that is, he should not have to prove what the plea agreement did not contain. Such a methodology, he contends, requires him to prove the nonexistence of a fact with affirmative evidence. Rather, Mr. Egan submits that his only burden was to show that the plea agreement supported his contention that the government acted arbitrarily in refusing to make a section 5K1.1 motion. Mr. Egan argues that, once he established this proposition, the burden should have shifted to the government to show by a preponderance of the evidence that a provision for continuing cooperation was a specific, negotiated term of the 1982 plea agreement. Alternatively, he argues that, even if the district court properly allocated the burden of proof, the district court erred in concluding that he had not met his burden of establishing that the government arbitrarily refused to file a substantial assistance motion.

The government argues that the prosecutor's refusal to make a motion for a downward departure is subject to extremely limited judicial review, if any review at all. Specifically, the government argues that "[t]he prerogative accorded the government by Congress and the Sentencing Commission in promulgating the 'substantial assistance' provisions is akin to the 'exclusive authority and absolute discretion' enjoyed by the government in determining whether to prosecute ... or what charges to bring." Appellee's Br. at 11 (citing *United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 3100, 41 L.Ed.2d 1039 (1974); *United States v. Batchelder*, 442 U.S. 114, 124-25, 99 S.Ct. 2198, 2204-05, 60 L.Ed.2d 755 (1979); *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d

604 (1978)). The government suggests that judicial review is limited to a determination of whether its decision was based on impermissible considerations such as race or speech. *See Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

### B. *Scope of Review*

 The disposition of Mr. Egan's contentions is controlled by the Supreme Court's decision in *Wade.* In that case, Justice Souter, writing for a unanimous court, held that a prosecutor's discretion to file a motion for downward departure when a defendant has substantially assisted is "subject to constitutional limitations that district courts can enforce." —— U.S. at ——, 112 S.Ct. at 1843. However, the situations in which a defendant would be entitled to relief were narrowly circumscribed. "[F]ederal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive. Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial assistance motion, say, because of the defendant's race or religion." —— U.S. at ——, 112 S.Ct. at 1844. The Supreme Court also noted with approval that the government had conceded that a defendant would be "entitled to relief if the prosecutor's refusal to move was not rationally related to any legitimate Government end." —— U.S. at ——, 112 S.Ct. at 1844. However, the defendant has no right to an evidentiary hearing unless he makes a substantial threshold showing. —— U.S. at ——, 112 S.Ct. at 1844.

### C. *Application to This Case*

 Under the holding in *Wade,* it is clear that the district court was correct in placing the burden of proof on Mr. Egan. Mr. Egan does not contend that the government's refusal to move for a downward departure was based on a constitutionally

impermissible ground such as race or religion. Nor can it be seriously maintained that the government's position was not rationally related to a legitimate government end. The government's refusal was based on its belief that Mr. Egan's cooperation was required under the 1982 plea agreement with the state. The plea agreement was never reduced to writing, and it is not clear what Mr. Egan and the state contemplated in 1982. For the government to take the position that the agreement contemplated continuing cooperation was not arbitrary. The government's concern was that Mr. Egan's assistance, which was too attenuated from the instant offense, should not be double counted. Mr. Egan received a significant benefit for his testimony at the initial trials. It was not clear that he deserved any additional benefit simply because retrial of the state criminal cases was necessary.[5] The government's position is not clearly beyond the range of reasonable options available to the prosecution under the law and the applicable plea agreement.

### Conclusion

The district court correctly determined that, absent a motion from the government, there was no basis in this case for a downward departure from the sentencing guideline range. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

---

5. Although the government did not file a substantial assistance motion, it did recommend that the district court consider Mr. Egan's assistance in setting the sentence within the guideline range. The district court did so and sentenced Mr. Egan to the lowest sentence possible within the applicable guideline range.