61 F.3d 906
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose SALCEDO, Defendant-Appellant.
 No. 94-3003.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 29, 1995.
Decided July 5, 1995.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin, No. 92 CR 218; Terence T. Evans, Chief Judge.
 E.D.Wis.
 MOTION DENIED.
 Before Cummings, Coffey and Rovner, Circuit Judges.
 
 ORDER
 
 1
 This case comes to us on a motion to withdraw as counsel accompanied by a no-merit brief filed by Jose Salcedo's attorney under Anders v. California, 386 U.S. 738 (1967). Salcedo pled guilty to conspiracy to possess cocaine with the intent to distribute, in violation of 21 U.S.C. Secs. 841(a)(1) and 846. The district court determined that Salcedo's sentencing range was 87-108 months and imposed a sentence of 96 months of imprisonment and four years of supervised release. Because there is at least one non-frivolous issue that warrants an appeal, we deny counsel's motion to withdraw.
 
 
 2
 A criminal defendant is entitled to the assistance of counsel on direct appeal to this court unless an appeal would be frivolous, which is defined as "groundless in light of legal principles and decisions." United States v. Eggen, 984 F.2d 848, 850 (7th Cir. 1993). We must appoint counsel if the record reveals that Salcedo can raise any "arguable" legal claims. Penson v. Ohio, 488 U.S. 75, 83 (1988). The Court of Appeals must examine the entire record rather than limit its inquiry to the points raised in the no-merit brief. Anders, 386 U.S. at 744.
 
 I. Substantial Assistance to Authorities
 
 3
 Salcedo's attorney raises one potential claim. Although Salcedo cooperated with authorities after his arrest, the government did not make a motion that would allow the court to depart downward for substantial assistance under U.S.S.G. Sec. 5K1.1 and 18 U.S.C. Sec. 3553(e). While Salcedo may believe that he provided the government with substantial assistance, the government has no duty to file the motion. Wade v. United States, 504 U.S. 181, 185 (1992). The prosecutor's decision not to file a substantial assistance motion is reviewable only if the refusal was based on an unconstitutional motive. Id. at 185-86; United States v. Durman, 30 F.3d 803, 807 (7th Cir. 1994), cert. denied, 115 S. Ct. 921 (1995); United States v. Kelly, 14 F.3d 1169, 1177 (7th Cir. 1994); United States v. Egan, 966 F.2d 328, 332 (7th Cir. 1992), cert. denied, 113 S. Ct. 1021 (1993). Moreover, a defendant must make a "substantial threshold showing" of unconstitutional motive before the court will order an evidentiary hearing. Wade, 504 U.S. at 186; Kelly, 14 F.3d at 1177-78; Egan, 966 F.2d at 332. The record contains no evidence that the government acted unconstitutionally by declining to file a substantial assistance motion. Thus, any appeal on this issue would be frivolous.
 
 
 4
 II. Use of Immunized Statements and Testimony
 
 
 5
 In his pro se submissions to the court, Salcedo argues that his indictment was improperly obtained. He asserts that at least some of the information presented to the grand jury may have derived from his proffers to federal authorities and his prior testimony in open court under a grant of immunity.[1] In addition, he further contends that his present counsel provided ineffective assistance by not pursuing this claim. If Salcedo made statements or gave testimony under a grant of immunity, the government may not use the information against him in subsequent criminal proceedings -- to do so would violate federal law as well as his Fifth Amendment right against self-incrimination. See Kastigar v. United States, 406 U.S. 441, 460-61 (1972); United States v. Eliason, 3 F.3d 1149, 1152 (7th Cir. 1993); 18 U.S.C. Sec. 6002.
 
 
 6
 To raise a claim of immunity, Salcedo must demonstrate that he gave compelled testimony or made statements under a grant of immunity. Kastigar, 406 U.S. at 460; Eliason, 3 F.3d at 1153. The government must then show that "the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." Kastigar, 406 U.S. at 460. On the basis of the record before us, Salcedo cannot raise a claim of immunity. Salcedo must present "relevant evidence" that he gave compelled testimony or made statements under a grant of immunity. Eliason, 3 F.3d at 1152. He asserts that his Pennsylvania plea agreement contained a grant of immunity. The plea agreement, however, is not included in the record, and the portions that Salcedo cites in his pro se submissions make no reference to immunity. The current record provides no basis for an immunity claim; thus, any appeal on this issue would be frivolous.
 
 
 7
 If Salcedo indeed made statements under a grant of immunity, his counsel's failure to raise the issue may fall "outside the wide range of professionally competent" representation and thus constitute ineffective assistance. Strickland v. Washington, 466 U.S. 668, 690 (1984). The record, however, is insufficiently developed to support a claim that Salcedo's attorney failed to raise a viable immunity defense. Thus, a direct appeal based on ineffective assistance would be frivolous.[2]
 
 III. Mandatory Minimum Sentence
 
 8
 Fed. R. Crim. P. 11(c)(1) requires that the district inform the defendant of any mandatory minimum penalty. The government established that Salcedo distributed between 3.5 and 5 kilograms of cocaine, which carries a mandatory minimum of five years of imprisonment and four years of supervised release. See 21 U.S.C. Sec. 841(b)(1)(B).[3] When the district court accepted the guilty plea, it did not inform Salcedo of the statutory minimum. This error, however, was harmless under Rule 11(h). See United States v. Padilla, 23 F.3d 1220, 1221 (7th Cir. 1994) (harmless error analysis applies to violations of Rule 11(c)(1)).
 
 
 9
 The plea agreement clearly states that the charge carries a mandatory minimum of five years of imprisonment and four years of supervised release. R. 24, Plea Agreement p 4. In addition, the plea agreement states that "the parties stipulate and agree that the applicable base offense level is 30." Id. at p 5(g). This stipulation informed Salcedo of his likely guideline range. With the three-level reduction for acceptance of responsibility, Salcedo's criminal history category of III gave him a sentencing range of 87-108 months, which requires a sentence greater than the five-year mandatory minimum. Finally, at the change of plea hearing, Salcedo's attorney stated that he had reviewed the plea agreement with Salcedo "paragraph by paragraph," had discussed the law and the sentencing guidelines with him, and was satisfied that he completely understood the plea agreement. See I Tr. at 3-4. Thus, Salcedo was informed of the mandatory minimum as well as his likely guideline range, so any violation of Rule 11(c)(1) was harmless, and an appeal on this issue would be frivolous.
 
 IV. Commencement Date of Sentence
 
 10
 Previously (in 1993), Salcedo was convicted of conspiracy to distribute cocaine and heroin in the United States District Court for the Eastern District of Pennsylvania and sentenced to four years of imprisonment. Salcedo had been in federal custody on this charge since September 28, 1991, thus his sentence was deemed to commence on that date. 18 U.S.C. Sec. 3585(b)(1). In the instant (Wisconsin) case, the district court determined that Salcedo's sentence should run concurrently to his sentence in the Pennsylvania case. See U.S.S.G. Sec. 5G1.3(b). The court then entertained arguments concerning when Salcedo's Wisconsin sentence shall be deemed to commence.
 
 
 11
 Salcedo offered September 28, 1991 -- the date that his Pennsylvania sentence commenced. II Tr. at 32. The government objected, noting that Salcedo was not writted out of custody to appear in court for the Wisconsin charges until August 24, 1993. Id. at 33. The court ordered that the sentence be deemed to commence on August 24, 1993, stating that "I think the law is that ... I can't reach back and give him credit for time that precedes his formal appearance in this Court." Id. at 34.[4]
 
 
 12
 Salcedo has a potential argument that the district court misinterpreted its authority to order that the sentence be deemed to commence in 1991 rather than 1993. This court has previously stated that "a sentencing judge has the discretion to provide that a sentence is to be retroactively concurrent with another sentence which has already been partially served." United States ex rel. Del Genio v. United States Bureau of Prisons, 644 F.2d 585, 589 (7th Cir. 1980), cert. denied, 449 U.S. 1084 (1981); see also Carnine v. United States, 974 F.2d 924, 929 n. 4 (7th Cir. 1992) ("A sentence can begin to run before it is imposed"); cf. Jones v. Thomas, 491 U.S. 376, 384 (1989) ("crediting time served under one sentence against the term of another has long been an accepted practice").[5] The claim that the district court did not realize it had the authority to order that the Wisconsin sentence be deemed to commence in 1991 seems at least arguable. Judge Evans made no statements at sentencing that reveal what he would have done if he believed he had the authority to deem that the sentence commence in 1991. If the district court indeed had that authority, a remand for resentencing would be necessary. Thus, an appeal on this issue would not be frivolous. Counsel's motion to withdraw is DENIED.
 
 
 
 [1]
 Salcedo filed a pro se motion in the district court to review the grand jury transcripts. R. 14. The district court refused to consider any motions not filed through his attorney. See R. 19, Order at 2
 
 
 [2]
 If Salcedo can support this claim with evidence outside the record, he may wish to pursue his ineffective assistance claim in a collateral attack under 28 U.S.C. Sec. 2255. United States v. Taglia, 922 F.2d 413, 417-18 (7th Cir. 1991), cert. denied, 500 U.S. 927 (1991)
 
 
 [3]
 The indictment states that Salcedo conspired to possess "in excess of five (5) kilograms of cocaine." R. 1, Indictment. This amount would carry a mandatory minimum of ten years of imprisonment and five years of supervised release. 21 U.S.C. Sec. 841(b)(1)(A). The amount of cocaine proven by the government, however, was between 3.5 and 5 kilograms. See Presentence Report p 9. In addition, the base offense level of 30 stipulated in the plea agreement applies when the amount is "[a]t least 3.5 KG but less than 5 KG of Cocaine." U.S.S.G. Sec. 2D1.1(c)(7). The amount of the drugs is a fact to be proved at sentencing rather than an element of the crime. United States v. Musa, 946 F.2d 1297, 1305-06 (7th Cir. 1991); United States v. Ruiz, 43 F.3d 985, 989 (5th Cir. 1995). Thus, when determining the mandatory minimum, we use the amount proven by the government at sentencing instead of the amount stated in the indictment
 
 
 [4]
 The docket sheet erroneously states that Salcedo's sentence shall be deemed to commence on August 24, 1994. If this error in any way affects Salcedo's sentence, it should be corrected
 
 
 [5]
 At least one circuit has held that courts cannot impose retroactively concurrent sentences, Wilson v. Henderson, 468 F.2d 582, 584 (5th Cir. 1972), and another has questioned their ability to do so. Shelvy v. Whitfield, 718 F.2d 441, 445-46 (D.C. Cir. 1983). In addition, Del Genio may not be good law after the Sentencing Reform Act of 1984: 18 U.S.C. Sec. 3585, which discusses the time at which a sentence commences, did not take effect until several years after the Del Genio decision. Section 3585 could be read to leave no discretion to select the commencement date to the district court. However, the parallel statute in effect when Del Genio was decided, 18 U.S.C. Sec. 3568 (repealed), contains similar language. Neither Sec. 3585 nor Sec. 3568 (repealed) discuss the specific issue of retroactively concurrent sentences